IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SHARON FREEMAN and MARK FREEMAN, individually, on behalf of all wrongful death beneficiaries, and on behalf of the ESTATE OF PHILLIP FREEMAN, | § § § § § | |
| Plaintiffs, | § § | Civil Action No. |
| v. | § § | 6:24-cv-195 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, *et al.*, | § § § § | |
| Defendants. | § § | |

# PLAINTIFFS' MOTION TO COMPEL SECOND DEPOSITIONS AND FOR SANCTIONS

The Court should compel second depositions of Defendants Bruce Armstrong and Angel Ramirez as a discovery sanction at the cost of Defendant Texas Department of Criminal Justice (TDCJ) due to its withholding of documents.

**I.   SUMMARY OF THE ARGUMENT**

This is an Eighth Amendment and ADA case involving a prison suicide where Defendants intentionally withdrew suicide watch from an inmate, Phillip Freeman, after they were warned he was at imminent risk of suicide by the prison mental health provider. The Court should compel Defendant TDCJ to bear the costs to take second depositions of Defendants Warden Bruce Armstrong and Captain Angel Ramirez for two reasons.

First, TDCJ withheld key documents about Warden Armstrong and Captain Ramirez's direct role in approving the staffing decisions that led to Mr. Freeman not being provided constant and direct observation despite the known imminent risk of suicide until after their depositions.

Second, TDCJ also withheld, despite failing to timely object, virtually all documents about

1

prior suicides and suicide attempts where Warden Armstrong and Captain Ramirez were supervising the area. Although Plaintiffs moved to compel these records in June, *see* Doc. 54, that motion remains pending and the discovery period is set to end on December 1, 2025.

Finally, the requested relief is appropriate to cure TDCJ's discovery violations. As Plaintiffs were unable to complete Warden Armstrong and Captain Ramirez's depositions before the close of discovery due to TDCJ's violation of the rules, resuming their depositions at TDCJ's cost will mitigate the unfair prejudice by placing Plaintiffs roughly in the position they would have been had TDCJ obeyed the rules.

Accordingly, the Court should compel Warden Armstrong and Captain Ramirez's second depositions at TDCJ's cost.

## II. STATEMENT OF THE CASE

### A. Factual Background

This is a wrongful death case arising from the suicide death of Phillip Freeman on February 14, 2022 inside the TDCJ Hughes Unit. *See* Ex. 3, Custodial Death Report; Doc. 24.

On February 12, 2022, medical staff at the TDCJ Hughes Unit determined Mr. Freeman was at imminent risk of suicide, causing him to be placed on "Constant and Direct Observation" ("CDO"), which, pursuant to TDCJ policy, requires security officers to continuously watch the prisoner.[1]

Medical staff confirmed to Defendant Warden Bruce Armstrong that Mr. Freeman continued to need CDO in an email sent at 4:11 pm on February 14, 2022.[2]

---

[1] *See* Ex. 2, Medical Record Excerpt, 1 ("Pt [patient] is currently on CDO [Constant and Direct Observation] and on waitlist for crisis management bed at SV [Skyview Unit prison]"); Ex. 24, TDCJ Policy AD-06.56, p. 3; Ex. 25, CMHC Policy G-53.01, p. 1.
[2] Ex. 31, Email re MHTDP CDO/Psych Obs update 2/14/2022.

Despite these requirements of Constant and Direct Observation, at 8:42 pm on February 14, 2022, Defendant Lieutenant Edward Summers had his subordinates—including Defendant Sergeant Hector Santiago—move Mr. Freeman into a dark, partially obstructed "holding enclosure," with no officer assigned to directly watch him.[3] Mr. Freeman was left in the cell for about 90 minutes before officers who happened to be walking nearby noticed he had died from hanging at 10:11 pm.[4]

Lieutenant Summers agreed to TDCJ's disciplinary finding that "[n]o staff [] member was directly assigned to monitor" Mr. Freeman.[5] Lieutenant Summers testified that Warden Armstrong and Captain Ramirez approved his decision to withdraw CDO because the staffing breakdown he prepared at the beginning of the shift necessarily implied that no staff member would be available to provide CDO after 9:30 pm.[6] However, as that staffing breakdown was not produced by TDCJ until after their depositions, Plaintiffs were deprived of the opportunity to ask Warden Armstrong and Captain Ramirez about their interpretation of the staffing breakdown—and thus whether they agreed with Lieutenant Summers that they had authorized the withdrawal of CDO for Mr. Freeman.

Warden Armstrong claimed this was the first incident where he had ever known the night shift to only have someone watch a CDO inmate from the control room (i.e., "picket").[7] In contrast, Lieutenant Summers testified that he had routinely used the holding enclosure for CDO in the same

---

[3] Ex. 1, TDCJ Office of Inspector General Narrative, p. 1; Ex. 6, TDCJ Hughes Unit Administrating Incident Review, p. 1; Ex. 4–5, Photos of Enclosure.
[4] Ex. 1, TDCJ Office of Inspector General Narrative, p. 2.
[5] Ex. 8, TDCJ Inter-Office Communication (April 12, 2022), pp. 1, 3; Ex. 12, Summers Deposition, 173:10–18.
[6] Ex. 12, Summers Deposition, 102:18–103:18, 105:24–106:7, 172:21–173:18; see Ex. 32–33 (email and its attached staffing breakdown that Lieutenant Summers discussed in his deposition).
[7] Ex. 11, Armstrong Deposition, 162:20–163:6.

3

manner that he did for Mr. Freeman without having an officer assigned to specifically watch the inmate.[8]

### B. Procedural history

Plaintiffs filed this case on October 24, 2023 and served initial discovery on TDCJ with the complaint. Doc. 1; Doc. 4.

Among Plaintiffs' initial discovery were requests for all versions of "shift, turn out, or assignment rosters" for the night of Mr. Freeman's death and all written statements about Mr. Freeman's death.[9] On January 16, 2024, TDCJ responded without objecting to those requests.[10]

On November 1, 2024, Plaintiffs served additional written discovery on TDCJ, as well as the other Defendants. Among those were requests for TDCJ to provide all emails and ESI to or from the individual defendants concerning Mr. Freeman, all documents about the loss of documents concerning Mr. Freeman, and all policies on staffing the Hughes Unit.[11]

On January 30, 2025, TDCJ (untimely) responded without objecting to these requests.[12]

On June 2, 2025, Plaintiffs moved to compel records of suicides and suicide attempts responsive to other November 1, 2024 requests because TDCJ asserted untimely objections, then agreed to produce the records, and then reneged on its agreement. *See* Doc. 54; Doc. 57; Doc. 63. That motion remains pending. Plaintiffs respectfully incorporate that motion by reference.

On September 4, 2025, TDCJ (untimely) responded to the May 16, 2025 requests without objecting.[13] Nonetheless, no turnout or CDO documents for other suicides have been produced.

---

[8] Ex. 12, Summers Deposition, 130:10–14, 132:22–133:16, 134:23–135:4, 135:10–23.
[9] *See* Ex. 13, First Requests for Production to TDCJ, pp. 10–11 (requests 7, 11).
[10] Ex. 14, TDCJ Response to First Written Discovery, p. 4.
[11] Ex. 15, Second Requests for Production to TDCJ, pp. 9, 12, 14 (requests 14, 15, 29, 34).
[12] Ex. 16, TDCJ Supplemental Reponses, pp. 3, 7, 9.
[13] Ex. 21, TDCJ's Responses to Third Requests for Production, pp. 3–4.

Beginning on September 24, 2025, Plaintiffs inquired of TDCJ about missing turnout records concerning Mr. Freeman—in particular, the signed turnout roster and any instructions from the regional director—and were assured that reasonable searches had been done, but TDCJ also refused to identify a person to explain the absence of those records or what search had been done.[14]

On November 3, 2025, Captain Ramirez testified that he attached instructions from the regional director to his final staffing report for the evening, but he could not remember the content of his communications to the regional director or the regional director's instructions.[15]

At the time of Warden Armstrong's November 10, 2025 deposition, Exhibit 32 to this motion had not been produced, and he did not recall whether he had been contacted about staffing the night shift on February 14, 2022 before Mr. Freeman's death.[16]

On November 19, 2025, TDCJ produced for the first time Exhibits 31–36 to this motion—emails about staffing the night shift of February 14, 2022, Mr. Freeman's status as a CDO inmate, and Mr. Freeman's death. Each document was responsive to one or more of Plaintiffs' written discovery requests listed above dating back to 2023. TDCJ's months-old responses to the May 16, 2025 requests had contended they could not find the email from the regional director.[17]

In attorney conferences, Defendants have refused to allow Warden Armstrong and Captain Ramirez to be re-deposed despite the late production of documents that those defendants received and authored, and TDCJ has declined to accept the cost of such depositions.

---

[14] *See* Ex. 40, Email from TDCJ's counsel, pp. 29–32
[15] Ex. 10, Ramirez Deposition, 53:18–55:5, 56:20–57:1.
[16] Ex. 11, Armstrong Deposition, 68:24–69:2.
[17] Ex. 17, TDCJ's Responses to Plaintiffs' Third Set of Requests for Production, p. 3 (request 51).

### III. LEGAL STANDARD

"Courts have a right to expect that litigants and counsel will take the necessary steps to ensure that relevant records are preserved when litigation is reasonably anticipated, and that such records are collected, reviewed, and produced to the opposing party." *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, No. 4:09-CV-4039, 2014 WL 651944, at *7 (S.D. Tex. Feb. 19, 2014) (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,* 685 F.Supp.2d 456, 461 (S.D. N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey,* 685 F.3d 135 (2d Cir. 2012)).

When litigants, or their attorneys, breach their duty to preserve, collect, and produce documents, the Court has inherent and explicit authority to sanction this failure. FED. R. CIV. P. 37; *see, e.g.*, *Bayoil, S.A. v. Polembros Shipping, Ltd.*, 196 F.R.D. 479, 481 (S.D. Tex. 2000) (striking personal jurisdiction defense as sanction under Court's inherent power where party deleted documents).

### IV. ARGUMENT

The Court should grant Plaintiffs' motion to compel and for sanctions for three reasons.

#### A. TDCJ has violated its duty to conduct a reasonable search for responsive documents.

TDCJ's conduct in this case is sanctionable because it has demonstrably failed to conduct a reasonable inquiry to find responsive documents.

By signing a discovery response, "an attorney or party certifies that to the best of the person's knowledge, information, and belief after a reasonable inquiry . . . is complete and correct as of the time it is made." FED. R. CIV. P. 26(g)(1)(A) (emphasis added). If a party acts in violation of this rule without "substantial justification," the Court may award an appropriate sanction against the party, the attorney, or both. FED. R. CIV. P. 26(g)(3). *See Nat'l Ass'n of Radiation Survivors v.*

6

*Turnage*, 115 F.R.D. 543, 554 (N.D. Cal. 1987) (issuing sanctions in part because party failed to disclose relevant documents) (cited approvingly in *Clearvalue, Inc. v. Pearl River Polymers, Inc.*, 242 F.R.D. 362, 375, 384 (E.D. Tex. 2007) (discovery process is an "honor system" and requires parties to produce relevant documents)); *R & R Sails Inc. v. Insurance Co. of State of PA*, 251 F.R.D. 520, 524–525 (S.D. Cal. 2008) (imposing sanctions where party failed to show it made a reasonable inquiry into the existence of relevant documents).

A "reasonable inquiry" is "the amount of examination that is reasonable under the circumstances of the case." *Holden v. Illinois Tool Works,* 429 F.Appx. 448, 452 (5th Cir. 2011). The duty under Rule 26(g) to make a "reasonable inquiry" is viewed from an objective standard. *Chapman & Cole v. Itel Container International B.V.*, 865 F.2d 676, 686 (5th Cir. 1989) (quoting advisory committee notes of Rule). Subjective bad faith is not required. *In re Byrd, Inc.*, 927 F.2d 1135, 1137 (10th Cir. 1991). "[W]hat is reasonable is a matter for the Court to decide on the totality of the circumstances." *Chapman*, 865 F.2d at 686.

Here, TDCJ has violated this duty in two respects.

First, TDCJ evidently never conducted a reasonable search for emails despite claiming that it did so in responses to multiple discovery requests. In responding to a request for all emails about Mr. Freeman, CDO, and suicide on December 9, 2024, TDCJ only referred to a no records affidavit which appears to be attached to a business records affidavit which had no other attachments.[18] Yet its eleventh-hour production on November 19, 2025 included three responsive email chains—Exhibits 31, 34, and 35 to this motion—which were all sent within 12 hours of Mr. Freeman's

---

[18] *Compare* Ex. 16, TDCJ Responses to Second Set of Written Discovery, pp. 3, 5–7 (requests 4, 12, 13, 14) *with* Ex. 37, Business Records Affidavit *and* Ex. 38, No Records Affidavit. Plaintiffs' counsel asked TDCJ to clarify this issue and was told verbally that no emails were found. *See* Ex. 39, Email from Plaintiffs' Counsel (Feb. 7, 2025).

death to one or more individual defendants. TDCJ claimed this was because "A new search was run in an abundance of caution," but the obvious responsiveness of those emails shows this was the first search ever done which came anywhere close to being reasonable.[19]

Second, TDCJ likewise evidently never conducted a reasonable search for the request for staffing-related documents on the night of Mr. Freeman's death, again despite claiming to have done so in two different discovery responses. TDCJ responded to requests for shift, turn out, and assignment rosters for the area Mr. Freeman was housed without objection and by referring to documents on January 16, 2024,[20] then asserted that "[a]fter a thorough search, TDCJ has not found any responsive documents" in response to requests for the regional director's instructions and other staffing-related documents on September 4, 2025.[21] Yet, again, documents responsive to both of those requests—including Exhibits 32, 33, and 41 to this motion—were produced as part of TDCJ's November 19, 2025 after Warden Armstrong's deposition.

### B. TDCJ's opposition to the June motion to compel is not reasonable.

The second depositions are also necessary because TDCJ untimely asserted objections and opposed a motion to compel documents about other incidents of suicides and suicide attempts for the reasons stated in the June motion to compel. Doc. 54. As those documents have been actively withheld throughout the discovery period, Plaintiffs had to proceed with the individual defendants' depositions without the ability to develop testimony about their involvement in other suicides and suicide attempts. Warden Armstrong and Captain Ramirez testified that they could not remember the details even about confirmed suicides under their watch,[22] so without the documents showing

---

[19] Ex. 40, Email from TDCJ's counsel (Nov. 20, 2025).
[20] Ex. 14, TDCJ's Responses to First Set of Written Discovery, p. 4 (request 7)
[21] Ex. 21, TDCJ's Responses to Third Set of Written Discovery, p. 3 (requests 51, 53).
[22] *See, e.g.*, Ex. 10, Ramirez Deposition, 77:12–15, 78:18–79:4, 90:22–91:2; Ex. 11, Armstrong Deposition, 77:24–78:14, 86:1–87:1.

the details of those incidents—and indeed without *any* information about non-fatal suicide attempts—Plaintiffs have been deprived of the ability to preserve these defendants' testimony about those incidents.

### C. Second depositions of Warden Armstrong and Captain Ramirez at TDCJ's cost are an appropriate remedy.

Plaintiffs need to re-depose Warden Armstrong and Captain Ramirez about the withheld documents, and permitting their second depositions as a sanction is appropriate, for three reasons.

First, the late-produced emails show both supervisors were directly involved in the staffing decisions which, according to Lieutenant Summers, foreseeably resulted in the withdrawal of CDO for Mr. Freeman.[23] Because neither of them remembered the details of their involvement, Plaintiffs were not able to preserve their testimony without access to the documents TDCJ was withholding at the times of their original depositions.[24]

Second, neither Warden Armstrong nor Captain Ramirez could remember prior suicides and suicide attempts at their depositions, and Plaintiffs had very limited documentation with which to attempt to refresh their memory or otherwise develop their testimony.[25]

Finally, reopening the depositions of these two individual defendants, at TDCJ's cost, is the least burdensome remedy to the unfair prejudice flowing from TDCJ's discovery violations. Indeed, TDCJ knew this was a possibility when it refused Plaintiffs' request to hold the depositions open as to the other incidents.[26]

---

[23] Ex. 12, Summers Deposition, 102:18–103:18, 105:24–106:7, 172:21–173:18; *see* Ex. 32–33 (email and its attached staffing breakdown that Lieutenant Summers discussed in his deposition).
[24] Ex. 10, Ramirez Deposition, 53:18–55:5, 56:20–57:1; Ex. 11, Armstrong Deposition, 68:24–69:2.
[25] *See, e.g.*, Ex. 10, Ramirez Deposition, 77:12–15, 78:18–79:4, 90:22–91:2; Ex. 11, Armstrong Deposition, 77:24–78:14, 86:1–87:1.
[26] *See* Ex. 42, Email from TDCJ's counsel (May 15, 2025).

Having failed to diligently search for responsive documents while deliberately withholding other relevant documents, TDCJ should carry the burden of putting Plaintiffs into the position they would have occupied had document discovery been completed in a timely fashion. *See, e.g.*, Ex. 43, *Davis v. Signal International Texas GP, LLC*, No. 1:11-cv-300, Doc. 119, p. 9 (E.D. Tex. Mar. 15, 2012) (ordering second deposition at defendant's cost due to delays in document production); *Climb Tech, LLC v. Verble*, No. A-05-CA-864 LY, 2008 WL 11334946, at *8 (W.D. Tex. Oct. 2, 2008) (ordering witness to be deposed a second time due to delays in document production after finding that "Plaintiffs need access to documents to properly prepare and conduct a deposition"). Indeed, TDCJ has been sanctioned in a similar way for similar misconduct in the past. *See* Ex. 44, *McCollum v. Livingston*, No. 3:12-cv-2037, Doc. 219, pp. 9–10, 14–15 (N.D. Tex. Jan. 26, 2015) (ordering depositions to be reopened at TDCJ's cost, and attorneys' fees to be paid, because numerous emails were produced after depositions had been conducted despite repeated assertions by TDCJ that no emails existed).

## V. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to compel and for sanctions.

Dated: November 30, 2025.

        Respectfully submitted,

        **EDWARDS LAW**
        603 W. 17th St.
        Austin, TX 78701
        Tel.  512-623-7727
        Fax.  512-623-7729

        By    /s/ Jeff Edwards
            JEFF EDWARDS
            State Bar No. 24014406
            jeff@edwards-law.com
            MICHAEL SINGLEY
            State Bar No. 00794642
            mike@edwards-law.com
            DAVID JAMES
            State Bar No. 24092572
            david@edwards-law.com
            LISA SNEAD
            State Bar No. 24062204
            lisa@edwards-law.com
            PAUL SAMUEL
            State Bar. No. 24124463
            paul@edwards-law.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

    I certify, by my signature below, that the foregoing has been served on counsel for all parties through the Court's electronic filing system.

        /s/ Jeff Edwards
        Jeff Edwards

**CERTIFICATE OF CONFERENCE**

    I certify, by my signature below, that I conferred with counsel concerning the relief requested in this motion. Defendants' counsel indicated they would oppose this motion and Defendants would not comply with the discovery at issue absent Court intervention.

        /s/ David James
        David James